UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
## 25-CR-20279-WILLIAMS/GOODMAN
Case No. _____

18 U.S.C. § 1956(h)
18 U.S.C. § 1956(a)(1)(B)(i)
18 U.S.C. § 1957(a)
18 U.S.C. § 982(a)(1)

UNITED STATES OF AMERICA

vs.

ONEL MARQUEZ RODRIGUEZ,
   a/k/a "Osiel,"

         Defendant.

_____/

FILED BY_____BM_____D.C.

Jun 17, 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

### INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Indictment:

#### Commercial Insurance

1.      Assurant, AT&T, JetBlue, and other companies offered Administrative Services Only ("ASO") insurance plans to their employees.  These employers contracted with the insurance company Blue Cross Blue Shield ("BCBS") to handle the billing, claims handling, and claims payment with respect to claims submitted on behalf of their employees.  These ASO insurance plans reimbursed BCBS for the money BCBS paid out for health benefits for their respective employees.

2.      The ASO insurance plans offered by Assurant, AT&T, JetBlue, and other companies and managed by BCBS were "health care benefit programs," as defined in Title 18, United States Code, Section 24(b).

3.      BCBS often made payments directly to physicians, medical clinics, or other health care providers, rather than to the beneficiary who received the health care benefits, items, and services.  This occurred when the provider accepted assignment of the right to payment from the beneficiary.

4.      To obtain payment for treatment or services provided to a beneficiary, physicians, medical clinics, and other health care providers had to submit itemized claim forms to BCBS. The claim forms were typically submitted electronically via the internet.  The claim form required certain important information, including:  (a) the beneficiary's name and Health Insurance Claim Number or other identification number; (b) a description of the health care benefit, item, or service that was provided or supplied to the beneficiary; (c) the billing codes for the benefit, item, or service; (d) the date upon which the benefit, item, or service was provided or supplied to the beneficiary; and (e) the name of the referring physician or other health care provider, as well as a unique identifying number, known either as the Unique Physician Identification Number ("UPIN") or National Provider Identifier ("NPI").

5.      When a provider submitted a claim form to a private insurance plan, the provider certified that the contents of the form were true, correct, and complete, and that the form was prepared in compliance with the applicable laws and regulations concerning the submission of health care claims.  The provider also certified that the services being billed were medically necessary and were in fact provided as billed.

**The Medicare Program**

6.      The Medicare Program ("Medicare") was a federal health care program that provided free or below-cost health care benefits to individuals who were sixty-five years of age or older or disabled.  The benefits available under Medicare were governed by federal statutes and

regulations.  The United States Department of Health and Human Services ("HHS"), through its agency the Center for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare.  Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

7.      Medicare was a "health care benefit program" as defined in Title 18, United States Code, Section 24(b).

8.      Medicare was subdivided into multiple program "parts."  Medicare Part B covered physician services and outpatient care, including an individual's access to durable medical equipment ("DME").

**The Medicaid Program**

9.      The Florida Medicaid Program ("Medicaid") was a partnership between the State of Florida and the federal government that provided health care benefits to certain low-income individuals and families in Florida.  The benefits available under Medicaid were governed by federal and state statutes and regulations.  Medicaid was administered by CMS and the State of Florida's Agency for Health Care Administration ("AHCA").  Individuals who received benefits under Medicaid were commonly referred to as Medicaid "recipients."

10.     Medicaid reimbursed DME companies and other health care providers for items and services rendered to recipients, including DME.  To receive payment from Medicaid, providers submitted or caused the submission of claims to Medicaid, either directly or through a Medicaid Managed Care Organization ("MCO").

11.     Medicare beneficiaries who were dual-enrolled Medicaid recipients were referred to as "dual-eligible beneficiaries."  To receive payment for dual eligible beneficiaries, providers submitted or caused the submission of claims to Medicare and Medicaid, either directly or through

a billing company or MCO.  Medicare would reimburse the primary cost (80%) and Medicaid would cover the secondary cost (20%) for dual-eligible beneficiaries.  Medicaid was funded with both federal and state money, and was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

### Durable Medical Equipment

12.     DME was equipment designed for everyday or extended use and for a medical purpose, such as orthotic devices, collagen dressing, wheelchairs, prosthetic limbs, nebulizers, and oxygen concentrators.

13.     Medicare and Medicaid reimbursed DME companies and other health care providers for items and services rendered to beneficiaries.  To receive payment, providers submitted or caused the submission of claims, either directly or through a billing company.

14.     A claim for DME reimbursement was required to set forth, among other things, the beneficiary's name and unique identification number, the equipment provided to the beneficiary, the date the equipment was provided, the cost of the equipment, and the name and unique physician identification number of the physician who prescribed or ordered the equipment.

15.     A claim for DME qualified for reimbursement only if it was medically necessary for the treatment of the beneficiary's illness or injury, prescribed by a licensed physician, and actually provided to the beneficiary as billed.

16.     A "bust out fraud" involved a DME or other health care company that engaged in a fraudulent scheme whereby the participants coordinated the purchase of a pre-existing health care business through which to conduct the fraud.  The scheme operated by using the insurance information for beneficiaries and the NPI for one or more physicians without their knowledge or consent to bill for services that were not medically necessary and/or never provided.  The

organizers then executed the fraud rapidly to maximize billing before the fraud was detected and BCBS, Medicare, or Medicaid shut the billing down.

**The Health Care and Shell Companies**

17.     Access Medical of Fort Meyers, Corp. ("Access Medical") was a Florida corporation located at 13240 N. Cleveland Avenue, Ste. 10, Fort Myers, Florida 33903.

18.     Acqualina Health Medical Solutions, Inc. ("Acqualina Health Medical") was a Florida corporation located at 12955 Biscayne Boulevard, Ste. 322, North Miami, Florida 33181.

19.     Best Medical Supply, Inc. ("Best Medical") was a Florida corporation located at 1621 North Tamiami Trail, Ste. 4, North Fort Meyers, Florida 33903.

20.     Del Prado Medical Supply Inc ("Del Prado Medical") was a Florida corporation located at 1323 Lafayette Street, Ste. 1, Cape Coral, Florida 33904.

21.     Del Prado Equipment Delivery Service Corp ("Del Prado Equipment") was a Florida corporation located at 1323 Lafayette Street, Cape Coral, Florida 33904.

22.     Capital Express USA; Corp ("Capital Express") was a Florida corporation located at 14505 Commerce Way, Suite 504, Miami Lakes, Florida 33016.

23.     Miranda Medical Equipment Delivery Services Corp. ("Miranda Medical") was a Florida corporation located at 9000 Sheridan Street, Suite 162, Pembroke Pines, Florida.

24.     Newtech Medical Supply LLC ("Newtech Medical") was a Florida corporation located at 2000 Bank Road, Ste. 223, Margate, Florida 33063.

25.     Oranky Food Service Corp. ("Oranky Food") was a Florida corporation located at 1323 Lafayette Street, Cape Coral, Florida 33904.

26.     Soledad Medical Center Inc. ("Soledad Medical") was a Florida corporation located at 434 S.W. 12th Avenue, Ste. 200, Miami, Florida 33130.

27.     Unlimited Med Supply, Inc. ("Unlimited Med") was a Florida corporation located at 9000 Sheridan Street, Ste. 162, Pembroke Pines, Florida 33024.

28.     Welfare Equipments, Corp. ("Welfare Equipments") was a Florida corporation located at 2500 N.W. 79th Avenue, Ste. 159, Doral, Florida 33122.

29.     Saffron Medical Supply Corp. ("Saffron Medical Supply") was a Florida corporation located at 13155 SW 134 Street #123, Miami, Florida 33186.

30.     OI Digital Data, Inc. ("OI Digital") was a Florida Corporation located at 13155 SW 134 Street #123, Miami, Florida 33186.

31.     Marrero OI Inc. ("Marrero OI") was a Florida Corporation located at 3057 W 80th St Hialeah, Florida 33018.

32.     Access Medical, Acqualina Health Medical, Best Medical, Capital Express, Del Prado Medical, Newtech Medical, Soledad Medical, Unlimited Med, Welfare Equipments, and Saffron Medical Supply, (collectively, the "Health Care Companies") were companies that purportedly provided DME, physical therapy, and other medical services to BCBS, Medicare, and Medicaid beneficiaries.

33.     Del Prado Equipment and Oranky Food were shell companies that received Medicare and Medicaid funds from Del Prado Medical and wrote checks to other entities and individuals.  Miranda Medical was a shell company that received Medicare funds from Unlimited Med and Best Medical and wrote checks to other entities and individuals. OI Digital and Marrero OI were shell companies that received Medicare funds from Saffron Medical Supply and wrote checks to other entities and individuals.  Miranda Medical, Del Prado Equipment, and Oranky Food are collectively referred to as the "Shell Companies."

**The Laundering Companies**

34.     Pedro Luzquinos, P.A. was a Florida corporation located at 8670 Taft Street, Pembroke Pines, Florida 33024.

35.     Bio Products & Services Inc was a Florida corporation located at 8670 Taft Street, Pembroke Pines, Florida 33024.

36.     AC&JD Consulting Corp was a Florida corporation located at 1130 N.W. 79th Drive, Plantation, Florida 33322.

37.     V & A Insurability LLC was a Florida corporation located at 1130 N.W. 79th Drive, Plantation, Florida 33322.

38.     MRP by Weston Inc was a Florida corporation located at 4452 Rainbow Avenue, Weston, Florida 33332.

39.     Pedro Luzquinos, P.A., Bio Products & Services Inc, AC&JD Consulting Corp, V & A Insurability LLC, and MRP by Weston Inc (collectively, the "Laundering Companies") were laundering companies that received BCBS, Medicare, and Medicaid funds from the Health Care Companies and the Shell Companies and wrote checks to other entities and individuals.

**The Defendant and Other Individuals**

40.     Defendant **ONEL MARQUEZ RODRIGUEZ, a/k/a "Osiel,"** was a resident of Miami-Dade County.

41.     Pedro Jesus Luzquinos ("Luzquinos") was the registered agent and owner of Pedro Luzquinos P.A. and Bio Products & Services Inc, and a resident of Broward County.

42.     Astrid Carolina Gomez Rivas ("Rivas") was the registered agent and owner of AC&JD Consulting Corp and V & A Insurability LLC, and a resident of Broward County.

43.     Melva Maritza Sanchez ("Sanchez") was the registered agent and owner of MRP by Weston Inc, and a resident of Broward County.

## COUNT 1
## Conspiracy to Commit Money Laundering
### (18 U.S.C. § 1956(h))

From in or around June 2019 through in or around December 2023, in Miami-Dade County, in the Southern District of Florida, and elsewhere the defendant,

### ONEL MARQUEZ RODRIGUEZ, a/k/a "Osiel,"

did knowingly and voluntarily combine, conspire, confederate and agree with Luzquinos, Rivas, Sanchez, and others known and unknown to the Grand Jury to commit offenses under Title 18, United States Code, Sections 1956 and 1957, that is:

(a) to knowingly conduct a financial transaction affecting interstate and foreign commerce, which transaction involved the proceeds of specified unlawful activity, knowing that the property involved in the transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed, in whole and in part, to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

(b) to knowingly engage in a monetary transaction by, through, and to a financial institution affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, and such property having been derived from specified unlawful activity, knowing that the property involved in the monetary transaction was derived from some form of unlawful activity, in violation of Title 18, United States Code, Section 1957(a).

It is further alleged that the specified unlawful activity is health care fraud, in violation of Title 18, United States Code, Section 1347.

## PURPOSE OF THE CONSPIRACY

1.      It was a purpose of the conspiracy for the defendant and his co-conspirators to unlawfully enrich themselves by laundering the proceeds of fraudulent claims submitted by the Health Care Companies to BCBS and ASO insurance plans managed by BCBS, Medicare, and Medicaid into and through the bank accounts of the Shell Companies and the Laundering Companies in the Southern District of Florida, as well as through cash withdrawals and checks written to co-conspirators.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendant and his co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

2.      The Health Care Companies engaged in a bust out fraud.  The Health Care Companies submitted false and fraudulent claims to BCBS and ASO insurance plans managed by BCBS, Medicare, and Medicaid for DME, physical therapy, and other medical services that were medically unnecessary and not provided to beneficiaries as represented.  As a result of such false and fraudulent claims, BCBS and ASO insurance plans managed by BCBS, Medicare, and Medicaid paid over $13,000,000 to the Health Care Companies.

3.      Upon deposit of health care fraud proceeds into their corporate bank accounts, four of these Health Care Companies, Best Medical, Del Prado Medical, Unlimited Med, and Saffron Medical Supply, transferred fraud proceeds to the Shell Companies.

4.      **ONEL MARQUEZ RODRIGUEZ** provided Luzquinos with hundreds of blank checks from the Health Care Companies and Shell Companies located in the Southern District of Florida, pre-signed by the respective owners of the Health Care Companies and Shell Companies.

5.      On the pre-signed blank checks from the Health Care Companies and Shell Companies, **ONEL MARQUEZ RODRIGUEZ** and Luzquinos wrote the names of the

Laundering Companies on the "payee" part of the checks and wrote various payment amounts. Rivas and Sanchez also wrote the names of their respective Laundering Companies and payment amounts on checks from the Health Care Companies and Shell Companies under Luzquinos' direction.

6.      Luzquinos provided Rivas and Sanchez dozens of checks from the Health Care Companies and Shell Companies for Rivas and Sanchez to cash and deposit into their respective Laundering Companies in exchange for a percentage of the check totals.  Rivas and Sanchez converted the remainder of check funds to cash and provided that cash to Luzquinos.

7.      Luzquinos would bundle the laundered cash received from Rivas and Sanchez and provide the cash, minus a pre-arranged percentage of the check totals for himself, Rivas, and Sanchez, to **ONEL MARQUEZ RODRIGUEZ**.

8.      In total, from in or around June 2019 through in or around December 2023, **ONEL MARQUEZ RODRIGUEZ**, Luzquinos, Rivas, and Sanchez laundered approximately $4,341,676 in health care fraud proceeds from the Health Care Companies and Shell Companies through checks written to the Laundering Companies.

9.      **ONEL MARQUEZ RODRIGUEZ** and his co-conspirators used the laundered fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the conspiracy.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS 2-4
### Money Laundering
### (18 U.S.C. § 1957(a))

1.      The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2.      On or about the dates specified below as to each count, in Miami-Dade County, in

the Southern District of Florida, and elsewhere, the defendant,

**ONEL MARQUEZ RODRIGUEZ, a/k/a "Osiel,"**

did knowingly engage in and attempt to engage in a monetary transaction affecting interstate and

foreign commerce, by, through, and to a financial institution, in criminally derived property of a

value greater than $10,000, such property having been derived from a specified unlawful activity,

and knowing that the property involved in the financial transaction represented the proceeds of

some form of unlawful activity, as more particularly described in each Count below:

| Count | Approximate Date of Transaction | Description of Monetary Transaction |
|-------|--------------------------------|-------------------------------------|
| 2 | October 5, 2021 | Check written to Pedro Luzquinos, P.A. in the amount of $16,914.36, drawn on a Del Prado Equipment bank account. |
| 3 | April 30, 2022 | Check written to Pedro Luzquinos, P.A. in the amount of $23,743, drawn on an Acqualina Health Medical bank account. |
| 4 | November 30, 2022 | Check written to Pedro Luzquinos, P.A. in the amount of $10,908, drawn on a Soledad Medical bank account. |

It is further alleged that the specified unlawful activity is health care fraud, in violation of

Title 18, United States Code, Section 1347.

In violation of Title 18, United States Code, Sections 1957 and 2.

## FORFEITURE ALLEGATIONS

1.     The allegations of this Indictment are hereby re-alleged and by this reference fully

incorporated herein for the purpose of alleging forfeiture to the United States of certain property

in which the defendant, **ONEL MARQUEZ RODRIGUEZ**, has an interest.

3.     Upon conviction of a violation of, or conspiracy to violate, Title 18, United States

Code, Sections 1956 and/or 1957, as alleged in this Indictment, the defendant shall forfeit to the

United States any property, real or personal, involved in such offense, and any property traceable

to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

11

All pursuant to Title 18, United States Code, Section 982(a)(1), and the procedures set forth at Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

_____

FOREPERSON

_____
HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

_____
ROGER CRUZ
ASSISTANT UNITED STATES ATTORNEY

12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

ONEL MARQUEZ RODRIGUEZ,
a/k/a "Osiel,"

_____/
Defendant.

**Court Division** (select one)

☑ Miami ☐ Key West ☐ FTP
☐ FTL ☐ WPB

CASE NO.: **25-CR-20279-WILLIAMS/GOODMAN**

**CERTIFICATE OF TRIAL ATTORNEY**

**Superseding Case Information:**
New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of new counts _____

I do hereby certify that:

1. I have carefully considered the allegations of the Indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, 28 U.S.C. §3161.

3. Interpreter: (Yes or No) Yes
   List language and/or dialect: Spanish

4. This case will take ___5___ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)                    (Check only one)
   I   ☑ 0 to 5 days                   ☐ Petty
   II  ☐ 6 to 10 days                  ☐ Minor
   III ☐ 11 to 20 days                 ☐ Misdemeanor
   IV  ☐ 21 to 60 days                 ☑ Felony
   V   ☐ 61 days and over

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____

7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Judge _____ Magistrate Case No. _____

8. Does this case relate to a previously filed matter in this District Court? (Yes or No) Yes
   If yes, Judge _____Beth Bloom_____ Case No. 24-20558-CR-Bloom

9. Defendant(s) in federal custody as of _____

10. Defendant(s) in state custody as of _____

11. Rule 20 from the _____ District of _____

12. Is this a potential death penalty case? (Yes or No) No

13. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? (Yes or No) No

14. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No

15. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No

16. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024? No

By: _____
Roger Cruz
Assistant United States Attorney
FL Bar No. 157971

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**:   ONEL MARQUEZ RODRIGUEZ, a/k/a "Osiel,"

**Case No**: _____

Count #: 1

Conspiracy to Commit Money Laundering in violation of 18.U.S.C. §§ 1956(a)(1)(B)(i), 1957(a)

Title 18, United States Code, Section 1956(h)
* **Max. Term of Imprisonment:** Twenty (20) Years
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Three (3) Years
* **Max. Fine:** $500,000 or Twice the Amount of Criminally Derived Property

Counts #: 2-4

Money Laundering

Title 18, United States Code, Section 1957(a)
* **Max. Term of Imprisonment:** Ten (10) Years
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Three (3) Years
* **Max. Fine:** $250,000 or Twice the Amount of Criminally Derived Property

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include
restitution, special assessments, parole terms, or forfeitures that may be applicable.**